UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ANN MARIE ROSENBLUM,

                Plaintiff,

– against –

RALEX SERVICES, INC., d/b/a GLEN ISLAND
CENTER FOR NURSING AND REHABILITATION,
LEAH FRIEDMAN FLAX individually and in her
capacity as sole shareholder of Ralex Services, Inc. and
owner and operator of Glen Island Center for Nursing and
Rehabilitation, MAURY FLAX, Executive Director of
Glen Island Center for Nursing and Rehabilitation, and
HARRY WRUBLE, Administrator of Glen Island Center
for Nursing and Rehabilitation,

                Defendants.

**COMPLAINT**

Case No. _____

Jury Trial Requested

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiff Ann Marie Rosenblum, by and through her attorneys, Sapir Schragin LLP, for her Complaint against Defendants alleges as follows:

**PRELIMINARY STATEMENT AS TO NATURE OF ACTION**

1. Between April 1, 2002 and March 31, 2009, Defendants Ralex Services, Inc., d/b/a/ Glen Island Center for Nursing and Rehabilitation ("Glen Island Center" or the "Center"), and Leah Friedman Flax bilked the New York State Medicaid Program and the United States Department of Health and Human Services, Centers for Medicare & Medicaid Services, of more than 2 million dollars by submitting tens of thousands of false and fraudulent claims and statements to the New York State Medicaid Program. *See United States of America and State of New York ex rel. Carolyn Hinestroza v. Ralex Services, Inc. d/b/a "Glen Island Center for Nursing and*

*Rehabilitation," Leah Friedman and Will-Maur Associates, LLC*, Case No. 10-CV-0822 (E.D.N.Y. 2014). These fraudulent submissions overstated the level of care that the Center was providing to residents, which resulted in inflated reimbursement rates to the Center. On the basis of 62,141 false claims, the Center received at least $2,217,229.39 in Medicaid monies at the fraudulently elevated reimbursement rate to which it was not entitled.

2. According to the lawsuit, the fraudulent scheme included false information about purported medical conditions, diagnoses and treatments; forged signatures and forged initials; a record tampering party at the Glen Island Center in 2007 during which numerous false entries and forgeries were made to residents' medical records; and producing many falsified records to the New York Attorney General Office's Medicaid Fraud Control Unit.

3. Defendant Leah Friedman Flax was at the center of the fraudulent scheme. She allegedly falsely certified the accuracy of submissions to the New York State Department of Health, and presented tens of thousands of false and fraudulent claims and statements to Medicaid so the Center would receive Medicaid payments at falsely inflated reimbursement rates. The Center eventually settled with the government and agreed to pay $2.2 million.

4. Defendants' alleged fraudulent behavior against the government similarly trickled down to its employees and Plaintiff. They were more than willing to willfully misclassify Plaintiff as an exempt employee, thereby engaging in theft of the statutorily required overtime compensation that she was entitled to receive for hours she worked over forty in each work week. They were also willing to engage in unlawful conduct in connection with the termination of Plaintiff's employment on May 19, 2017.

5. Defendants gave Plaintiff the title of Accounts Receivable Manager, and paid her an annual salary in excess of $83,000.00, all with the intent of misclassifying her and cheating her

out of her overtime compensation. Plaintiff's job duties were clerical or routine in nature, and not managerial. She kept the books and records of receivable accounts on behalf of her employer, Defendant Glen Island Center, in conformity with routine policies and procedures. She did not weigh various options and choose among them. She did not exercise discretion and independent judgment, and she did not supervise other employees.

6. Plaintiff was not an exempt employee under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 216, *et seq.*, or the New York State Labor Law ("NYSLL") Article 19, §§ 650 *et seq.*, and the applicable regulations of the New York State Department of Labor, 12 N.Y.C.R.R. Part 142.

7. As a result of this intentional misclassification, Defendants failed to pay overtime compensation due to Plaintiff, and she brings this action to recover overtime compensation lawfully due to her under the FLSA, 29 U.S.C. § 216 (b), and Article 19 of the NYSLL.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the claims are brought pursuant to a federal statute, FLSA, 29 U.S.C. § 216(b).

9. The Court has supplemental jurisdiction over the New York Labor Law claims pursuant to 28 U.S.C. § 1367(a).

10. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because Plaintiff worked for Defendants in New Rochelle in Westchester County, New York, within the Southern District of New York. Defendants conduct business in this District, and the acts and omissions giving rise to the claims alleged took place in this District.

## THE PARTIES

11. Plaintiff Ann Marie Rosenblum resides in the Bronx, in Bronx County, New York. She was employed by Defendants from June 1, 2004 to May 19, 2017.

12. At all relevant times, Plaintiff was an employee within the meaning of the FLSA and the NYSLL.

13. Defendant Glen Island Center is a nursing and rehabilitation facility located at 490 Pelham Road in New Rochelle, New York. Upon information and belief, Defendant Leah Friedman Flax is the sole shareholder and operator of Ralex Services, Inc., which does business as the Glen Island Center.

14. Plaintiff intends to hold Defendant Leah Friedman Flax, the sole shareholder of Ralex Services, Inc., liable for her unpaid overtimes wages, pursuant to New York Business Corporation Law § 630(a).

15. Upon information and belief, Defendant Maury Flax is the Executive Director of the Glen Island Center (and the son of Defendant Leah Friedman Flax) over which he has day-to-day operational control. He has the power to hire and fire employees; supervises and controls employee work schedules and conditions of employment; determines the rate and method of payment to employees; and maintains employee records.

16. Upon information and belief, Defendant Harry Wruble is the Administrator of the Glen Island Center, and shares with Defendant Maury Flax day-to-day operational control of the Glen Island Center. He has the power to hire and fire employees; supervises and controls employee work schedules and conditions of employment; determines the rate and method of payment to employees; and maintains employee records.

17. At all relevant times, each Defendant was an employer within the meaning of the FLSA and the NYSLL.

18. Upon information and belief, the annual amount of business done by the Center is at least $500,000.00. It is a covered enterprise under the FLSA in that it is a business that provides nursing care for residents.

## STATEMENT OF FACTS

19. Plaintiff was employed by Defendants from June 1, 2004 to May 19, 2017. At the time of the unlawful termination of her employment, Plaintiff received an annual salary of $83,000.00.

20. The Center's official business hours were from 9:00 a.m. to 5:00 p.m., with a ½ hour lunch break.

21. Plaintiff rarely (if ever) worked from 9:00 a.m. to 5:00 p.m., with a ½ hour lunch break free from all work. Instead, she routinely worked from her arrival at work, through her lunch break, until sometime between 5:30 and 6:30 p.m., and frequently longer.

22. Plaintiff worked an average of 5 overtime hours each week for which she was not paid overtime compensation.

23. Plaintiff was given the title of "Account Receivable Manager" so that Defendants could misclassify her as an exempt employee (believing that anointing her a "manager" would necessarily mean exempt status), and avoid the legal obligation to properly compensate Plaintiff for her overtime hours.

24. Plaintiff's duties were clerical in nature. She kept the books and records of the Center's receivable accounts, in conformity with established policies and procedures. Her duties included maintaining a weekly patient census, and computing patient room and board and ancillary

charges; completing monthly bank reconciliations; completing weekly Medicaid billing; tracking Medicaid accounts receivables; completing monthly Medicare, HMO, and private insurance billing; posting cash receipts and deposits; and, keeping track of monthly patient account closings. This involved such tasks as recording and tabulating data, monthly billing, and ordinary bookkeeping. It was mechanical, repetitive and routine work under the direction and supervision of the Center's Director of Finance.

25. Plaintiff did not regularly and customarily exercise discretion and independent judgment in the performance of her duties. She supervised no other employees, and did not have the authority to hire or fire other employees or make recommendations on hiring or firing decisions that carried any weight. She did not manage the Center or a department thereof. Ms. Rosenblum was not an exempt employee and was entitled to the payment of overtime wages, which she did not receive.

26. For several years, the Center had a time clock system, and Ms. Rosenblum recorded all her work hours by clocking in and clocking out of that system. For a time, the Center also required employees to sign in and out on a book that remained at the front desk. In recent years, Ms. Rosenblum was required to accurately record her work time on weekly handwritten timesheets and submit them to her supervisor. Ms. Rosenblum has copies of some of the weekly handwritten timesheets, but, upon information and belief, Defendants have complete time records for Ms. Rosenblum, including the records from the time clock system, the book containing work arrival and departure times, and all handwritten timesheets.

27. Upon information and belief, Defendants maintained accurate and complete time records for Plaintiff yet still failed to properly compensate her for the overtime hours she worked beyond 40 in a workweek and for work she performed during her lunch break.

28. The amount of overtime wages owed to Plaintiff has yet to be determined in the absence of accurate and complete time records for Plaintiff.

## FIRST CAUSE OF ACTION
**(Unpaid Overtime Wages Due Under the Fair Labor Standards Act)**

29. Plaintiff repeats and realleges each allegation contained in paragraph 1 through 28 of the Complaint as if fully set forth herein.

30. At all relevant times, Plaintiff was an employee, and Defendants were employers within the meaning of the FLSA.

31. The overtime wage provisions of the FLSA apply to Defendants.

32. Defendants intentionally misclassified Plaintiff as an exempt employee for the sole purpose of avoiding the payment of overtime compensation to her.

33. Defendants failed to pay Plaintiff the overtime wages to which she was entitled under the FLSA for all hours she worked in excess of 40 in each work week.

34. Defendants' violations were willful and without good faith or a reasonable basis to believe that the failure to pay overtime wages was lawful.

35. As a result of Defendants' willful violations of the FLSA, Plaintiff has suffered damages by being denied overtime wages.

36. Because Defendants' violations of the FLSA, including improperly classifying Plaintiff as an exempt employee, and failing to pay her overtime compensation for hours worked in excess of 40 in a week, were willful, a three-year statute applies to each violation, pursuant to 29 U.S.C. § 255.

37. As a result of Defendants' unlawful acts, Plaintiff has been deprived of overtime compensation in amounts to be determined at trial, and is entitled to recovery of such amounts,

liquidated damages, prejudgment interest, attorneys' fees, costs and other compensation pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
**(New York Labor Law, Unpaid Overtime Wages)**

38. Plaintiff repeats and realleges each allegation contained in paragraph1 through 28 of the Complaint as if fully set forth herein.

39. At all relevant times, Plaintiff was an employee, and Defendants were employers within the meaning of the NSYLL.

40. The overtime wage provisions of Article 19 of the NSYLL and the supporting regulations apply to Defendants.

41. Defendants intentionally misclassified Plaintiff as an exempt employee for the sole purpose of avoiding the payment of overtime compensation to her.

42. Defendants failed to pay Plaintiff the overtime wages to which she was entitled under the NSYLL for all hours she worked in excess of 40 in each work week.

43. By intentionally misclassifying Plaintiff as an exempt employee and failing to pay her overtime wages for the hours she worked in excess of 40 hours per week, Defendants willfully violated NSYLL, Article 19, §§ 650 *et seq*., and the supporting New York State Department of Labor Regulations, including but not limited to the regulations in 12 N.Y.C.R.R. Part 142.

44. Defendants' conduct, as described herein, constitutes a willful violation of the NSYLL without a good faith or reasonable basis to believe that the failure to pay overtime wages was lawful.

45. Due to Defendants' willful violations of the NSYLL, Plaintiff is entitled to recover her unpaid overtime wages, liquidated damages, reasonable attorneys' fees, costs, and pre- and post-judgment interest.

**WHEREFORE**, Plaintiff prays for the following relief:

A.     Issuance of a declaratory judgment that the practices complained of in this Complaint are unlawful under the FLSA and NYSLL and the supporting New York State Department of Labor regulations;

B.     Unpaid overtime wages and an additional equal amount as liquidated damages pursuant to 29 U.S.C. §§ 201 *et seq.*, and the supporting United States Department of Labor regulations;

C.     Unpaid overtime wages pursuant to NYSLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor regulations, and liquidated damages;

D.     Pre-judgment interest;

E.     An injunction requiring Defendants to pay all statutorily-required wages pursuant to the NYSLL;

F.     Attorneys' fees and costs; and

G.     Such other relief as the Court deems just and proper.

Dated:   White Plains, New York
         November 3, 2017

                                   **SAPIR SCHRAGIN LLP**

                          By: *Howard Schragin*

                                Donald Sapir, Esq.
                                Howard Schragin, Esq.
                                Ann L. Moscow, Esq.
                                399 Knollwood Road, Suite 310
                                White Plains, New York 10603
                                (914) 328-0366
                                (914) 682-9128 (fax)
                                E-Mail:  dsapir@sapirschragin.com
                                               hschragin@sapirschragin.com
                                               amoscow@sapirschragin.com
                                *Attorneys for Plaintiff Ann Marie Rosenblum*